IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRYAN GEORGE VONDERAHE,

    **Petitioner,**

v.                              CASE NO. 22-3043-JWL

D. HUDSON, Warden, USP-Leavenworth,

    **Respondent.**

## MEMORANDUM AND ORDER

This matter is a petition for habeas corpus filed under 28 U.S.C. § 2241. Petitioner challenges the Federal Bureau of Prisons' ("BOP") calculation of his federal sentence. The Court dismisses the Petition for failure to exhaust administrative remedies.

**I. Background**

Petitioner is incarcerated with the BOP and is housed at USP-Leavenworth in Leavenworth, Kansas. Petitioner was convicted of Wire Fraud, in violation of 18 U.S.C. § 1343, and was sentenced in the Eastern District of Missouri on September 13, 2020, to 48 months of imprisonment and 3 years of supervised release. (Doc. 3–1, at 6.)

Petitioner alleges that he has not been awarded proper credits under the First Step Act ("FSA"). Petitioner filed the instant § 2241 Petition on March 9, 2022, claiming that he is being held beyond his alleged February 16, 2022 release date. *Id*. at 6. Petitioner claims that the BOP has incorrectly calculated his release date as September 20, 2022. Petitioner alleges that:

> The Bureau of Prisons is violating my liberty interest under 18 U.S.C. Sections 3621(e), 3624(g), and 3632(d)(4)(A)(i) and (ii), by detaining me beyond my release date of February 16, 2022. I received one year off my sentence under 18 U.S.C. Section 3621(e), which created a release date of 11/08/2022 . . . I then received 265 days of prerelease custody credits (time credits)

> under the Frist Step Act (FSA) . . . which moved my release date to February 16, 2022, yet, the BOP incorrectly calculated my release date as 09/20/2022 . . .

(Doc. 1, at 6) (citing attached Exhibits A and B at Docs. 1–1 and 1–2).

The Residential Drug Abuse Program ("RDAP") consists of three phases: (1) the unit-based component; (2) follow-up services while housed at a Bureau institution; and (3) the Community Treatment Services ("CTS", formerly known as TDAT) component in the community. *See* Declaration of Jason Wells, Psy. D. Drug Abuse Program Coordinator ("Wells Decl."), Doc. 3–2, at ¶ 2.; Doc. 3–2, at 6. Successful completion of CTS is required to receive RDAP incentives, such as early release under 18 U.S.C. § 3621(e). *Id*.; Doc. 3–2, at 6 (Program Statement 5330.11 at § 550.53(3) "Inmates . . . must complete CTS to have successfully completed RDAP and receive incentives . . . ."). Therefore, because the CTS component is required for successful completion of RDAP and to earn an early release under § 3621(e), an inmate cannot complete the component on supervised release. *Id*.

The Attorney General was allowed 210 days after the First Step Act was enacted, on December 21, 2018, to develop and publish the Risk and Needs Assessment System, which the BOP was to use as a guide to implement the programs. 18 U.S.C. § 3632(a). The Attorney General published the Risks and Needs Assessment System on July 19, 2019.[1] The BOP then had 180 days, or until January 15, 2020, to implement the system, complete inmate assessments, and then begin to assign prisoners to appropriate evidence-based recidivism reduction programs. *Id*. at § 3621(h)(1). The BOP was not required to apply credits under the FSA until the end of the FSA's designated phase-in period on January 15, 2022. *See* 18 U.S.C. § 3621(h)(2).

---

[1] The First Step Act of 2018: Risk and Needs Assessment System, accessible online at https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf (last visited May 4, 2022).

The BOP implemented the FSA's time credit ("FTC") incentives beginning on January 11, 2022. Wells decl. at ¶ 7. In the first couple days, many inmates became eligible for an immediate release from their sentence or an immediate transfer to a residential reentry center ("RRC") or onto home confinement once their FTCs were applied. *Id*. When implementing the FTCs, the BOP faced potentially competing interests, including the need to open up a significant number of beds in RRCs and for home confinement supervision to accommodate the immediate transfers from institutions and the need for RDAP inmates to complete the CTS component in order to earn their § 3621(e) early release. *See id.* at ¶ 8. Ultimately, the BOP decided RDAP inmates in the community (i.e., already at an RRC or on home confinement) would receive the benefit of FTCs and their § 3621(e) early release even if they had not completed all 120 days of the CTS component. *Id*. These inmates had the benefit of some drug treatment in the community. *Id*. However, the BOP determined inmates still housed at BOP institutions would have to complete a minimum of 120 days of CTS, and their release date under § 3621(e) and application of FTCs would be adjusted. *Id*.

Petitioner was housed at USP-Leavenworth at the time the BOP implemented the FTCs. *Id*. at ¶ 9. Petitioner therefore fell into the category of inmates who the BOP determined would be required to complete a minimum of 120 days in the CTS component of RDAP in order to earn his § 3621(e) early release before getting the benefit of an early release due to his FTCs. *Id*. Petitioner has an RRC placement date on May 24, 2022, to begin the CTS component. *Id*. An earlier placement is not possible due to limitations on bed space at the RRC. *Id*. Petitioner's projected release date is now September 20, 2022, via an early release under 18 U.S.C. § 3621(e) and the application of his FSA time credits. *Id*.

Petitioner states in his Petition that he requested release from the BOP on January 30, 2022, and his request was denied on February 7, 2022. (Doc. 1, at 2.)  Petitioner also states that he filed a second request on February 8, 2022, which is still pending. *Id*. at 3.

Petitioner acknowledges in his Petition that he has not exhausted his claims, arguing that "[t]he four-level appeal process in the BOP takes months to exhaust, and since I was supposed to be released last month, I am asking the Court to waive the exhaustion requirement to prevent further prejudice." *Id*. at 7.  Petitioner asks the Court to order the BOP to immediately place Petitioner in a halfway house so that he may participate in the final component of RDAP (called Aftercare or TDAP), or to immediately release Petitioner so he can attend the program by traveling from his home to the community center where it is provided. *Id*.

## II. Discussion

To obtain habeas corpus relief, an inmate must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A § 2241 petition is appropriate when a prisoner challenges the execution of his sentence rather than the validity of his conviction or sentence. *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).

Federal prisoners proceeding under § 2241 must exhaust their available administrative remedies. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) ("The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement.") (citation omitted)).  The exhaustion requirement allows the BOP "an opportunity to correct its own mistakes . . . before it is haled into federal court" and it discourages "disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotations omitted). The exhaustion requirement is

satisfied when the petitioner "us[es] all steps that the agency holds out." *Id.* at 90.

The BOP's four-part administrative remedy program is codified at 28 C.F.R. § 542. *See also* Program Statement 1330.18, *Administrative Remedy Program* (Doc. 3–1, at 9–24). The program is designed to address a federal inmate's concerns regarding any aspect of his or her confinement. Declaration of H. Degenhardt, Associate Warden's Secretary, USP Leavenworth ("Degenhardt decl."), Doc. 3–1, at ¶ 4. The policy affords federal inmates the opportunity to voice their grievances and provides staff an opportunity to resolve issues in-house prior to an inmate seeking relief through the judicial system. *Id*.

The administrative remedy program requires an attempt at the informal resolution of a grievance followed by formal grievances addressed at the institutional, regional, and national levels. The BOP's administrative remedy process involves four steps:

> First, the inmate raises an informal complaint to BOP staff, who "shall attempt to informally resolve the issue." 28 C.F.R. § 542.13(a). Second, the inmate files an Administrative Remedy Request, or BP-9 form, with the warden. § 542.14(a). Third, the inmate appeals to the regional director through a BP-10 form, which must be accompanied by "one complete copy or duplicate original" of the BP-9 and the warden's response. § 542.15(a), (b)(1). Fourth, the inmate appeals to the general counsel at the central office with a BP-11 form that must also be accompanied by "one complete copy or duplicate original of the institution and regional filings"—i.e., the BP-9 and BP-10 forms—"and their responses." § 542.15(a), (b)(1).

*Fernandez-Perez v. Greilick*, No. 21-1116, 2021 WL 4515253, at *1 (10th Cir. 2021) (unpublished). Exhaustion requires completing all levels of review. *See Woodford*, 548 U.S. at 90 (finding that exhaustion requires "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)") (citation omitted)). "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Respondent alleges that Petitioner failed to fully exhaust administrative remedies before filing this action. Since July 1990, the BOP has maintained information related to administrative complaints filed by inmates under the BOP's Administrative Remedy Program in a national database called "SENTRY." *See* Degenhardt decl., ¶ 6. One of the many functions of the SENTRY database is to track administrative remedy complaints and appeals. *Id*. This system allows for a computerized search of complaints and appeals. *Id*.

Each complaint is logged into SENTRY at the receiving location. *Id*. at ¶ 7. If the complaint is an initial filing, it will be assigned a unique "Remedy ID Number" upon initial entry, which will follow the complaint throughout the appeal process. *Id*. Each "Remedy ID Number" also contains an extender that identifies the level of review. *Id*. The extension "F-_" indicates the complaint was filed at the institution level. *Id*. The extension "R-_" indicates the complaint or appeal was filed with the Regional Director. *Id*. The extension "A-_" indicates the appeal was filed with the National Inmate Appeals Section, Central Office. *Id*. The number at the end of the extension will change if the appeal is refiled due to a prior rejection at that level. *Id*.

When a remedy is rejected, notice of the rejection and the reason for the rejection is provided to the inmate and the administrative remedy submission is mailed back to the submitting inmate. *Id*. at ¶ 8. The rejection is logged into SENTRY using the REJ code, indicating the remedy has been rejected. *Id*. An additional Code indicating the reason(s) for the rejection or other information/instructions provided to the inmate is also logged into SENTRY. *Id*.

The automated administrative remedy records in the SENTRY database concerning each inmate are not purged and can be searched back as far as inception of the system. *Id*. at ¶ 9.

Indexes must be maintained in computer accessible form for twenty (20) years and then destroyed. *Id*. Pre-SENTRY indexes are maintained at the site of creation for twenty (20) years and then destroyed. *Id*. However, the hard copies of the actual administrative remedy files are maintained for a period of three (3) years and then destroyed. *Id*.

A review of Petitioner's administrative remedy history reveals that Petitioner has not exhausted his administrative remedies regarding his claims related to his FSA time credits. *Id*. at ¶ 10, Ex. C (Petitioner's Administrative Remedy Data). The only Administrative Remedy Petitioner has filed is Remedy #1111548-F1, which was received on February 23, 2022. *Id*. at ¶¶ 10–11; Doc. 3–1, at 25. The Warden responded to the administrative remedy on April 6, 2022, noting that Petitioner was submitted for 120-day RRC placement and is designated to the RRC on May 24, 2022. (Doc. 4–1, at 5.) The response further provides that if Petitioner is dissatisfied with the response, he may appeal to the North Central Regional Director within twenty calendar days. *Id*.

Petitioner acknowledges that he has not fully exhausted his administrative remedies, but asks the Court to waive the requirement because he is past his alleged release date. Although exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, a narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion would be futile. *Daybell v. Davis*, 366 F. App'x. 960, 962 (10th Cir. 2010) (unpublished) (citations omitted); *see Garza*, 596 F.3d at 1203 (recognizing "narrow exception to the exhaustion requirement" when "petitioner can demonstrate that exhaustion is futile").

The petitioner in *Garner* argued that the Court should waive the exhaustion requirement because the delay caused by exhaustion would deprive him of the opportunity to receive a full twelve-month placement in an RRC. *Garner v. United States*, Case No. 21-3138-JWL, 2021 WL

3856618, at *2 (D. Kan. Aug. 30, 2021). This Court held that:

> similar arguments regarding the timing of administrative review have been rejected. In *Salters v. Hudson*, this Court rejected petitioner's argument that exhaustion should be excused because it would take too long and cause irreparable harm. *Salters*, 2020 WL 3960427, at *3. The Court noted that a similar argument was rejected in *Gaines v. Samuels*, where petitioner argued that requiring full exhaustion would deprive him of time in an RRC. *Id.* (citing *Gaines v. Samuels*, No. 13-3019-RDR, 2013 WL 591383, at *2 (D. Kan. Feb. 14, 2013) (finding no extraordinary circumstance to warrant waiver of exhaustion requirement); *see also McIntosh v. English*, No. 17-3011-JWL, 2017 WL 2118352 (D. Kan. May 16, 2017)). The Court noted in *Gaines* that "[t]he Supreme Court has required that even those inmates who may be entitled to immediate release exhaust their administrative remedies." *Id.* (citing *Gaines*, 2013 WL 591383, at *2 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 494–95 (1973))); *see also Koger v. Maye*, No. 13–3007–RDR, 2013 WL 591040, at *2–3 (D. Kan. Feb. 14, 2013) (rejecting a similar argument and finding that "exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will not obtain relief on administrative appeal before the final year of his sentence ... [t]he twelve-month mark in the Second Chance Act is an express statutory maximum, and not a mandated minimum.").

*Garner*, 2021 WL 3856618, at *3; *see also Samples v. Wiley,* 349 F. App'x 267, 269 (10th Cir. 2009) (unpublished) (finding futility argument not supported by contention that administrative process is too slow and it was unlikely the BOP procedure would be completed by the date on which petitioner would have needed to be transferred to an RRC in order to receive a twelve-month RRC placement).

Petitioner has not shown that exhaustion would be futile or that the Court should waive the exhaustion requirement. Petitioner sets forth in his Traverse his many efforts, beginning in January 2022, to resolve the issues in this case and the many miscommunications he received.[2]

---

[2] Petitioner suggests that he is being retaliated against for filing this action. (Doc. 4, at 6–7.) To the extent Petitioner has a retaliation claim, it must be raised in a civil rights complaint after the exhaustion of administrative remedies. Claims challenging a prisoner's conditions of confinement do not arise under Section 2241. *See McIntosh*, 115 F.3d at 811–12 (contrasting suits under Section 2241 and conditions of confinement claims); *see also*

Although the Court is sympathetic to Petitioner's frustration with the delay in finding him an RRC placement, Petitioner's FTC credits, when finally awarded, may be used towards his period of supervised release. Section 3632(d)(4)(C) provides that "[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release." 18 U.S.C. § 3632(d)(4)(C); *see also Gratton v. Dismas Charities, Inc.*, No. 3:20-00509, 2021 WL 4163992, at *5 (M.D. Tenn. Aug. 20, 2021) (finding no basis to waive exhaustion requirement despite passage of release date and noting that FTC credits also apply to supervised release) (citing Section 3632(d)(4)(C)).

It appears as though Petitioner appealed to the Regional Director on April 11, 2022, and is awaiting a decision. (Doc. 4–1, at 8.) The exhaustion requirement allows the BOP "an opportunity to correct its own mistakes . . . before it is haled into federal court" and it discourages "disregard of [the agency's] procedures." *Woodford*, 548 U.S. at 89 (quotations omitted). The Court is therefore dismissing the Petition without prejudice to refiling after Petitioner fully exhausts his administrative remedies.

**IT IS THEREFORE ORDERED** that the Petition is **dismissed without prejudice** for failure to exhaust administrative remedies.

**IT IS SO ORDERED**.

**Dated May 5, 2022, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**

---

*Bruscino v. True*, 708 F. App'x 930, 935 (10th Cir. 2017) (unpublished) (finding claim that transfer was in retaliation for role in class action lawsuit was not properly brought in a § 2241 habeas proceeding because it challenges the conditions of confinement rather than the duration of custody).